

United States District Court
District Of Massachusetts

Walter D. Johnson, Jr.,
　　　　　　Petitioner

Civil Action No. 05-11569-MAP

v.

Michael J. Ashe, Jr.,
　　　　　　Respondent

## PETITIONER'S OBJECTS TO REPORT AND RECOMMENDATION

Now come the petitioner, Walter D. Johnson, Jr., in the above entitled matter and respectfully moves this Honorable Court with his objects to the February 22, 2006 report and recommendation regarding the findings that Respondent's arguments were persuasive and recommendation that his petition be dismiss. It should be noted that the petitioner received the Report and Recommendation with regard to respondent's motion to dismiss on March 6, 2006.

When the petitioner received the Report and Recommendation Regarding the Respondents Motion to Dismiss post marked March 2, 2006, he was scrambling to stabilized himself in the Interfaith Cot Shelter, 43 Center Street, Northampton, Massachusetts 01060.

Although the respondent had moved to dismiss the petition, the Commonwealth appearance: Jeffrey J. Yelle's lead investigator Officer Fallon is still undisciplined and they are still not held accountable, particularly, Officer Fallon approved uniform policemen because of the Massachusetts Sex Offenders Board designation of petitioner as

a Level 3 Sex Offender, on July 3, 2005, conducted that invaded the petitioner's private apartment charging him maliciously with kidnapping, assault and battery, and threat to commit a crime (rape). On August 5, 2005, the kidnapping and threat to commit a crime (rape) were nolle prosequi, and after a criminal trial in the Holyoke District Court, on February 13, 2006, the petitioner was found innocent of assault and battery by a jury. During the criminal trial, the Commonwealth would not let Officer Fallon nor his uniform policemen testify because the probable cause for arrest was based on the petitioner being designated as a Level 3 Sex Offender, and now the petitioner been released from the custody of the respondent at the Hampden County Sheriff's Department and Correctional Center.

## 1.  BACKGROUND

The petitioner asserts that Holyoke Police Department Officer Daniel Fallon and uniform officials under his authority reported on February 17, 1985, at 2:30 a.m., a black male raped a white female. That over the cause of four days they conducted a search, which resulted in his being seized on the Dwight Street near the intersection of Pleasant Street in the City of Holyoke on February 21, 1985 for the incident, which he continues to deny any involvement in. At less he had not been involved; he's very much involved now. They transported him to the station as in an arrest, interrogated him from approximately 3:40 p.m., and subjected him to a face to face identification procedure around 5:00 p.m., in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.

The petitioner also asserts that he had been arraigned in the Holyoke District Court, on February 22, 1985, where he had been assigned and represented by Bar

Advocate Nancy O'Conner who withheld the Holyoke District Court Docket Entry, which reported he committed an offense of aggravated rape on February 21, 1985, which the Officer Fallon did note in the police statements following this case. Also, he had been ordered held on bail of a $1,000.00 cash and $10,000.00 security in the custody of the Hampden County Sheriff's Department and House of Correction at York Street Jail on February 22, 1985.

The petitioner further asserts, that the police statements of the Officer Fallon investigation from February 17, 1985 through February 21, 1985, and the concurrent jurisdiction created by the Holyoke District Court Docket aggravated rape date of offense on February 21, 1985, formed the bases for the March 15, 1985, Hampden County Grand Jury Indicted, which he was arraigned on in the Springfield Superior Court and was represented by the Committee for Public Counsel Services ("CPCS") appointed attorney Nancy Caplan on April 2, 1985.

The petitioner moreover asserts, that the CPCS appointed attorneys withheld that the Hampden County Grand Jury Indictments were implemented to change the Holyoke District Court Docket Entry date of offense from February 21, 1985, to the Holyoke Police Department police statements date of offense, February 17, 1995 for trial in the Springfield Superior Court. For example, Attorney Caplan filed an appearance that she would be counsel representing the petitioner for trial, however, she appears to have violated a Superior Court Rule because the Attorney Richard Fontaine failed to file an appearance but a filed motion to withdraw the petitioner's counsel, on October 11, 1985, which a judge of the Superior Court allowed without Attorney Caplan filing a motion to

withdraw nor Attorney Fontaine filing an appearance that he would be representing the petitioner at the trial.

Although the judge of the Superior Court continued the original trial date for the appointment of counsel until the appearance of Vincent A. Bongiorni on October 16, 1985, in violation of the Superior Court Rule that appearance file motion simultaneously with withdrawal. Attorney Bongiorni filed a motion to withdraw, on February 11, 1986, and the trial judge withdrew appearance at that time. On February 12, 1986, the trial judge stated that the petitioner wanted to try the case himself and that he advised the petitioner against it on February 11, 1986. Also, the trial judge appointed David Hoose as stand by counsel and ordered that the petitioner remain in the custody of the Hampden County Sheriff's Department and House of Correction (respondent) in violation of the Sixth and Fourteenth Amendment to the United States Constitution. Then petitioner, on February 19, 1986, filed three pro se motions: one for the bill of particulars; a second for all the statements following the case; and, a third for inspection of the tangible evidence in violation of his Fifth Amendment rights not to be compelled in criminal prosecution to be a witness against himself.

The petitioner was convicted of aggravated rape in the Hampden County Superior Court on April 23, 1986, after a trial by a jury in violation of his Sixth Amendment rights, specifically to confront witnesses against and to have counsel cross-examine them. The next day, April 24, 1986, he was sentenced to serve no less than 7 and no more than 15 years at MCI-Cedar Junction for the illegal indictments. At the time of his conviction, he had already been in custody for 427 days because the court-appointed counsel delayed

prosecution of his trial in violation of his Sixth Amendment right to a speedy and fair trial.

The petitioner had been incarcerated for a total of over eight and one-half years. Over seven years and 6 months had elapsed since the sentence and despite his unrelenting efforts; his conviction had never been reviewed by any court on direct appeal in violation of his right to a speedy and prompt trial under the Sixth and Fourteenth Amendments.

On April 5, 1993, he submitted for a writ of habeas corpus to the United States District Court because his state appeal had gone nowhere which resulted in the CPCS denial that it assigned Attorney Richard T. Brown on the direct appeal for the purpose of the United States Magistrate Judge Zachary R. Karol, who had been spurred to recommendation that the Commonwealth of Massachusetts, through CPCS appoint new appellate counsel.

Thomas G. Murray, Esq., as a direct result had been the attorney appointed by the CPCS to the petitioner. Thus, the petitioner had the obligation to meet with Attorney Murray and explained that his right to counsel had been violated because he was not merely transported to the Holyoke Police Department as in an arrest, but subjected to interrogation and face to face identification procedures alone between him and the Commonwealth witnesses at the station house on February 21, 1985.

This discussion took place in the Hampden County Sheriff's Department and Correctional Center on or about July 1, 1994, while the United States District Court supervised the progress Attorney Murray had been appointed to take to move petitioner's appeal forward through the appellate courts of Massachusetts, which resulted in the state-appointed appellate attorney stating that the petitioner's would be deprived of due process

unless his direct appeal had not been reinstated on motion, but the United States
Magistrate Judge Karol determined that the petitioner due process rights had been
violated from ineffective assistance of appellate counsel.

Of course, the Massachusetts Appeals Court reversed the conviction because the
state-appointed appellate counsel had presented that the trial court erred in forcing the
petitioner to proceed to trial pro se, assisted by "stand-by counsel', in the absence of an
unequivocal waiver of the right to be represented by counsel, and without an adequate
showing that any purported waiver was voluntarily, knowingly and intelligently made.
Yet, the state-appointed appellate attorney limited scope on the first direct appeal to the
morning of trial commencing on April 17, 1986, and remained silent regarding the
petitioner not waiving his right to counsel prior to the morning of trial (the court-
appointed appellate counsel therein put in no statements of the Commonwealth witnesses
that were different from their trial testimony), where the United States District Court
Judge Mark L. Wolf, on September 14, 1995, dismissed as moot the petitioner's third
habeas corpus petitioner.

At the Massachusetts Supreme judicial Court (the "SJC"), where the court-
appointed appellate counsel filed for 366 days delay, the Commonwealth sought further
appellate review where it admits CPCS appointed Richard T. Brown, Esq., but had
informed the United States Magistrate Judge Karol the CPCS had not assigned Attorney
Brown and attributed the delay of nine years bring to the appeal to the petitioner who the
Magistrate Judge Karol determined was not to be attributed with the delays caused by
state.

The court-appointed appellate counsel had not only deprived petitioner of constitutional right to have report of circumstances and status at the SJC level, he been ineffective assistance of counsel at the supreme court level appellate level by filing nothing on the petitioner's behalf for the malicious criminal of threat to do bodily harm; intimidation; assault with intent to commit rape; aggravated rape; non-aggravated rape; assault and battery; and two counts of indecent assault and battery on an adult affrimance.

The SJC was in error finding that the Attorney Caplan was replaced with Attorney Fontaine and that the Superior court allowed petitioner September 27, 1986 motion to dismiss counsel concurrently with Attorney Fontaine motion to withdraw counsel on October 11, 1985. It also error finding in regard to the three motions the petitioner filed, on February 19, 1986. The court-appointed appellate counsel filed for an extension and delayed 336 days and filed nothing favoring for the petitioner at the Massachusetts Supreme Judicial Court (the "SJC"), as a direct result, the court-appointed appellate counsel failed to process the petitioner's appeal forward through the appellate courts of Massachusetts.

## 2.  DISCUSSION

The respondent argument: that the petitioner is not in custody pursuant to the conviction he challenges; the petitioner should be found time-barred; and, the petitioner failed to satisfy the statutory requirement that he exhaust state remedies prior to filing his petition.

<u>Objection To In Custody</u>

1. The respondent's custody shed no light on why the Commonwealth appearance: Jeffrey J. Yelle's lead investigator Officer Fallon approved uniform police of the City of Holyoke, on July 3, 2005, invasion of the petitioner's apartment except for the fact that the Massachusetts Sex Offender Board designated the petitioner as a level 3 sex offender. Thus, allowing Officer Fallon and his men to deprive him of liberty resulting in his lost of employment, confiscate his property and homeless.

Officer Fallon approval of the uniform policemen invasion into the petitioner apartment, on July 3, 2005, had been the charging of the petitioner with kidnapping, assault and battery, and threat to commit a crime (rape), which resemble instruments of the Hampden County Grand Jury on March 15, 1985.  Importantly, petitioner had been found not guilty of assault and battery, on February 13, 2006 after kidnapping and threat to commit a crime (rape) were nolle prosequi on August 5, 2005, however, the probable cause existed because Officer Fallon's subordinates investigation should that he was a registered level 3 sex offender.  Thus, the petitioner had been in the Hampden County Sheriff's Department and Correctional Center custody pursuant to the judgment of a State court only because of the Massachusetts Sex Offender Board designation, which was the reason why none of the officers testified during the trial in the Holyoke District Court on February 13, 2006.

The designation was particularly documented (indeed, it was somewhat contained on an official narrative), but police officers did not testify because of the custody for reasons of his being designed as a sex offender resulted in his being in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the

United States. In other words, the Holyoke Police Department Officers stated that the petitioner committed kidnapping, assault and battery, and threat to commit a crime (rape) occurred July 3, 2005 at 4:25, and failed to present a witness during the trial to verify the commission of any offense on or before that time, as well, distancing themselves from the corruption, the respondent present records that show the petitioner served his period of confinement for that 1986 conviction and information that he was released there from on September 9, 1989.

Since the petitioner had been released from custody, the designation used to return him to custody and subject him to criminal responsibility and competence examination was the reason for the respondent custody, which again relates to the 1986 conviction, not any alleged incident on July 3, 2005. Since, Officer Fallon's uniformed policeman's narrative contained no time of arrival to the scene and it had been the first time the petitioner at the apartment alone they moved and the misconduct cannot seem as a point to disregard.

The respondent asserted that custody that compulsory registration as a sex offender is a collateral consequence of conviction that does not meet the custody requirement for the petitioner. But the petitioner had not entered such a debate, he simply inferred that Officer Fallon approved his arrest merely to evolve a long the conviction, which the basic for relied on the Sex Offenders Registry Board designation of him as a Level 3 Sex Offender. For no other reason than the petitioner had been the subject of their Department Criminal Investigation Bureau based on the 1986 conviction that clearly spurred Officer Fallon's misconduct. If the sex offender's designation had not been utilized to confinement the petitioner for a period of confinement that has been fully

served there might be no reason for him seeking an evidentiary hearing to determine whether his direct appeal was no more than a meaningless ritual on the grounds of the inordinate and unjustified delays in the appellate court.

Since the arresting officer did not testify at the time of the trial in the Holyoke District Court, he had been arrested because of the 1986 conviction and designation as a level 3 sex offender, his custody from that conviction illegal, the violation of his due process right continue.

### Objection To Exhaustion of State Remedies and Timeliness

The respondent shed light on why the petitioner should be attributed failure of the court-appointed appellate counsel delays at the state supreme judicial court level, which resulted in the Commonwealth appearance: Jeffrey J. Yelle's lead investigator Officer Fallon utilizing the sex offender's designation to approve his subordinate uniform policemen taking his back into custody.

Although the petitioner only received information that the court-appointed appellate counsel delayed 366 days at the state supreme judicial court level through this instance petition. The respondent cannot rely on the court-appointed appellate counsel's withholding evidence favorable to the petitioner in order that it present and prevail on a claim of none exhaustion of state remedies. The petitioner had a right that his direct appeal be process through the courts of the state, however, the court-appointed appellate counsel failed to extend him the right and his counsel failure to file anything simply added the insult to injury.

Thus, the petitioner cannot be held responsible for the court-appointed appellate counsel failure to notify him of the activities at the state supreme judicial court level

because as the petitioner points out, he had been prejudice since the court appointed

counsel failed not merely to notice him of the March 4, 1997, affirmance of his

conviction by the SJC, and his right to know that he had a right to seek certiorari with the

United States Supreme Court. In fact, it appears evidence that the petitioner had no

knowledge of the ineffective assistance at the time he filed a fourth federal habeas

petition in May of 1998. It was dismissed by District Judge Joseph L. Tauro on March

23, 1999 for reason of exhaust. For the delay of the court appointed appellate attorney at

the state supreme judicial court and his failure to inform the petitioner of the direct appeal

status the respondent should not benefit.

Therefore, the petitioner requests an evidentiary hearing in the matter.

Respectfully submitted,
Walter D. Johnson, Jr.,
Pro se
Interfaith Cot Shelter
43 Center Street
Northampton, MA 01060

Dated: March 9, 2006

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on March 9, 2006 by U.S. Mail, upon:

Randall E. Ravitz (BBO # 643381)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2852